# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

|                                        |     |                          |
|----------------------------------------|-----|--------------------------|
|                                        | *   |                          |
| **HAYWOOD D. BRADLEY,**                | *   |                          |
| **Plaintiff**                          | *   |                          |
| **v.**                                 | *   | **CIVIL NO.  JKB-11-1799** |
| **BALTIMORE POLICE DEP'T** *et al.*,   | *   |                          |
| **Defendants**                         | *   |                          |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

### I.  Background

This case was filed by Haywood D. Bradley against various individuals and entities and involves claims of employment discrimination, violation of federal civil rights, and tortious conduct under Maryland common law and constitutional law.  (Compl., ECF No. 1.)  All causes of action were premised upon allegedly wrongful acts committed against Bradley during the course of his employment as a police officer in the Baltimore Police Department.  Previously, the State of Maryland was dismissed from the case (ECF No. 33), as were former Mayor Sheila Dixon and Mayor Stephanie Rawlings-Blake and the City Council of Baltimore (ECF No. 35).  Remaining as Defendants in the case are the Baltimore Police Department ("BPD" or the "Department"); former Baltimore Police Commissioner Frederick H. Bealefeld III; Mark Grimes, Esq., who is Chief of Legal Affairs for BPD; and Linda Shields, Esq., who is Trial Board Counsel for BPD (collectively, the "Police Defendants").  The Police Defendants have filed a motion to dismiss or, in the alternative, a motion for summary judgment.  (ECF No. 12.)  The Court has considered the motion, Bradley's response (ECF No. 28), and the Police Defendants' reply (ECF No. 29).  No hearing is necessary.  Local Rule 105.6 (D. Md. 2011).  To

the extent the motion is construed as a motion to dismiss, it will be granted in part and denied in part.   To the extent the motion is construed as a motion for summary judgment, it will be - granted.

## II.  *Standard of Dismissal for Failure to State a Claim*

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.   An inference of a mere possibility of misconduct is not sufficient to support a plausible claim.   *Id.* at 679.   As the *Twombly* opinion stated, "Factual allegations must be enough to raise a right to relief above the speculative level."  550 U.S. at 555.

## III.  *Standard for Summary Judgment*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)).   The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).   If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment.  *Id.* at 252.   The facts themselves, and the inferences to

be drawn from the underlying facts, must be viewed in the light most favorable to the opposing

party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir.

2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by

affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial,

Fed. R. Civ. P. 56(c)(1).   Supporting and opposing affidavits are to be made on personal

knowledge, contain such facts as would be admissible in evidence, and show affirmatively the

competence of the affiant to testify to the matters stated in the affidavit.  Rule 56(c)(4).

## IV. *Analysis*

### A. *Federal Claims*

Bradley has asserted various federal claims against the Police Defendants:  employment

discrimination on the basis of race (African-American) under Title VII (Count I); retaliation

under Title VII (Count II);[1] violation of right to contract under 42 U.S.C. § 1981 (Count III);

violation of constitutional and civil rights under 42 U.S.C. § 1983 (Count IV); and conspiracy to

deprive him of constitutional rights under 42 U.S.C. § 1985(3) (Count V).   All five counts were

brought against all of the Police Defendants with the exception of Count IV, the § 1983 claim,

which was brought against only BPD and the Commissioner.  All will be addressed in turn.

#### 1. *Claims under Title VII*

##### a. *Proper Parties Defendant*

BPD concedes it is a proper defendant under Title VII because it is Bradley's employer.

(Defs.' Mot. Dismiss Supp. Mem. 16-17, ECF No. 13.)  However, the other Police Defendants

argue, quite correctly, that they are not proper defendants under Title VII because they do not fit

the statutory definition of employer.  One must be an "employer" within the meaning of Title VII

---

[1] Although the heading of Count II only refers to the Maryland statute, the body of the count refers to Title VII in addition to the Maryland statute, so this Court is treating Count II as one brought, in part, under Title VII.

in order to be held liable under that statute.  *See Lissau v. Southern Food Service, Inc.*, 159 F.3d

177, 181 (4th Cir. 1998) ("Congress only intended employers to be liable for Title VII

violations").  The term is defined in the statute as

> a person engaged in an industry affecting commerce who has fifteen or more
> employees for each working day in each of twenty or more calendar weeks in the
> current or preceding calendar year, and any agent of such a person . . . .

42 U.S.C. § 2000e(b).

Supervisors sued in their individual capacities may not be held liable under Title VII.

*Lissau*, 159 F.3d at 181.  Although Bradley contends he brought his Title VII claims against the

Commissioner, Grimes, and Shields in their official capacities (Pl.'s Opp'n 10), his complaint

requires a different conclusion.  At no point, does he allege he is suing these three individuals in

their official capacities.   Instead, he specifically "requests judgment against individual

Defendants" in both Count I and Count II.  Even if he had sued these three people in their official

capacities, it would be pointless to do so since a suit brought in that manner would still be, in

effect, a suit against the Baltimore Police Department, which is already a defendant under these

counts.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (noting governmental entity is "real

party in interest" in official capacity suit); *Nivens v. Gilchrist*, 444 F.3d 237, 249 (4th Cir. 2006)

(claim for monetary damages against public official in his official capacity is, in effect, one

against governmental entity employing the official).  Consequently, the Commissioner, Grimes,

and Shields will all be dismissed from Counts I and II.

### b.  *Exhaustion*

The Department seeks dismissal of the Title VII claims insofar as they have not been

exhausted.  Two issues are presented:  one, timeliness of the administrative charge and, two, its

substantive scope.  Bradley presents no argument with respect to timeliness of his EEOC charge,

instead addressing only the scope of allegations he made to the EEOC.

Under the statute, 42 U.S.C. § 2000e-5(e)(1), an aggrieved individual may file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") or an equivalent State agency.  If the charge is initially filed with the EEOC, then it must be filed within 180 days after the allegedly unlawful practice occurred; but if the individual has initially filed a charge with an equivalent State agency, then the charge must be filed with the EEOC within 300 days after the allegedly unlawful practice occurred.  *See National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101, 109 (2002) ("In a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice; in all other States, the charge must be filed within 180 days.  A claim is time barred if it is not filed within these time limits.").  However, "[i]n the latter situation [in which the initial filing is made with the State agency], the subsequent filing with EEOC cannot come earlier than 60 days after the commencement of the state or local proceedings unless those proceedings have been 'earlier terminated.'  42 U.S.C. § 2000e-5(c)." *EEOC v. Techalloy Maryland, Inc.*, 894 F.2d 676, 677 (4th Cir. 1990).  In Maryland, the equivalent State agency is the Maryland Commission on Human Relations ("MCHR").  *See generally* Md. Code Ann., State Gov't § 20-101 *et seq.* (LexisNexis 2009).  A plaintiff only gets the benefit of the 300-day limitation if the EEOC charge is filed concurrently with or after the plaintiff filed a charge with the equivalent State agency.  *See, e.g.*, *White v. BFI Waste Services, LLC*, 375 F.3d 288, 292 (4th Cir. 2004); *Williams v. Giant Food, Inc.*, 370 F.3d 423, 428 (4th Cir. 2004).  It has been recognized in the Fourth Circuit and in this District that, because of the worksharing agreement between the MCHR and the EEOC, a claim initially filed with the EEOC within the 300-day limit is considered timely filed under Section 2000e-5(e)(1).  *See Techalloy Maryland*, 894 F.2d at 677-79 (waiver in worksharing agreement, for charges filed between 180

and 300 days, is self-executing and comprises both initiation and termination of proceedings with MCHR); *Francis v. Bd. of Sch. Comm'rs, Balto. City*, 32 F. Supp. 2d 316, 321 (D. Md. 1999) ("a charge is deemed timely if it is sent to the EEOC within 300 days after the alleged unlawful practice").

Applying these principles to the instant case and treating the motion as a motion to dismiss, the Court concludes the administrative charges filed by Bradley with the EEOC and the MCHR were timely.  The 300-day time limit applies to Bradley's case.  The administrative charges on which Bradley relies were attached to his complaint as Exhibit 1 and they show that Bradley signed the EEOC charge on April 11, 2010, and an amended charge on April 20, 2010. (Although BPD contends the EEOC charge was dated April 22, 2010, the exhibit shows otherwise.)  Both the original charge and the amended charge take issue with departmental charges against him on January 1, 2009, and May 1, 2009, after he was involved in a domestic incident.  Bradley's complaint indicates the May departmental charge was only a refiling of the January charge (Compl. ¶ 16); thus, the operative date is May 1, 2009, in computing the beginning of the 300-day period.  However, well in advance of the expiration of this time, Bradley's complaint indicates he filed a statement of charges with the EEOC on or about December 22, 2009.  (*Id.* ¶ 3.)  Bradley alleges his case was assigned to an EEOC case investigator on or about March 29, 2010, who apparently prepared the formal charge for Bradley's signature, the latter event occurring in April 2010.  BPD has not refuted Bradley's allegation as to the filing of the statement of charges on December 22, 2009.  Consequently, the Court concludes Bradley's EEOC charge was timely filed with respect to the May 1, 2009, departmental charge against him.

Nevertheless, the substantive scope of his EEOC charge limits Bradley's federal court lawsuit based thereon.  His specific complaint to the EEOC was that the January 2009 and

May 2009 departmental charges were placed against him and termination was recommended for him even though, allegedly, white police officers were treated more favorably under similar circumstances.  In contrast, the allegations of his complaint to this Court are wide-ranging, to the point that much of what he complains of is deemed unexhausted.

"'Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit.'"  *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300-01 (4th Cir. 2009) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir.1996)).  Stated differently, if the claims made in a judicial complaint are reasonably related to a plaintiff's EEOC charge and if they can be expected to follow from a reasonable administrative investigation, then those claims may be included in the subsequent lawsuit.  *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000).  The description of the conduct in the EEOC charge must parallel the conduct described in the judicial complaint.  *See Chacko v. Patuxent Institution*, 429 F.3d 505, 506 (4th Cir. 2005) ("We hold that a plaintiff fails to exhaust his administrative remedies where, as here, his administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit.").  *See also Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005).  A Title VII plaintiff who has not raised in his administrative proceedings the issue of retaliation due to filing an EEOC charge can nevertheless raise the issue of retaliation for the first time in federal court.  *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992).

In Bradley's complaint, he alleges discrimination based upon the following:

In February of 2008, there began a course of discrimination and harassment against Plaintiff by Defendants, resulting in discriminatory treatment of Plaintiff based on his race.  The course of conduct embarked upon by Defendants continued for several years at the Department until April 2011.  The course of conduct described resulted in an unlawful and unsubstantiated over three year

suspension and other intimidating conduct designed to harass Plaintiff, such treatment being discriminatory in nature to Plaintiff solely by reason of his race and/or and in retaliation for his EEOC charges and internal complaints of discrimination.

(Compl. ¶¶ 37-39.)

Further, Bradley's complaint alleged:

On February 25, 2008, Plaintiff was suspended without pay because he appeared in the Circuit Court for Baltimore County and faced a charge of Reckless Endangerment to which he entered an Alford Plea and was granted a Probation Before Judgment pursuant to Maryland Courts and Judicial Proceedings Code Ann. § 6-220. Plaintiff is aware of other Caucasian officers who faced similar and even more serious charges or repeat charges of similar or worse conduct who were not similarly disciplined. In the over three year period Plaintiff was suspended, Plaintiff was denied of the opportunity to earn overtime, denied requested assignments, denied the opportunity to receive secondary employment, denied the opportunity for advancement and promotions and denied other benefits that would normally be afforded to an officer of Plaintiff's status and suffered a subsequent reduction in pay, loss of above-mentioned privileges, and suffered severe damage to his workplace reputation as well as a result.

(*Id.* ¶¶ 41-43.)

In addition, he alleged:

Even though Plaintiff's suspension began in February 25, 2008, Plaintiff did not receive actual charges until September 29, 2009, and Plaintiff did not receive a trial board hearing until April of 2011, when Plaintiff's suspension was terminated. All of this was in violation of the Department Rules and Regulations. During Plaintiff's suspension and until Plaintiff was reinstated, Plaintiff suffered suspensions and disciplinary action designed to harass and intimidate and to suppress Plaintiff's expression of rights guaranteed to him by the Constitution of the United States and the Rules and Regulations of the Department. Such treatment was at all times disparate from the treatment received by Caucasian members of the Department who, for same or similar conduct, received little and/or no suspensions, denials of overtime, denials of requested assignments, or denials of secondary and/or alternative employment.

(*Id.* ¶¶ 45, 46.)

Bradley's complaint, insofar as it alleges employment discrimination, is based upon not only the January 2009 and May 2009 departmental charges relating to his incident of domestic violence, but also what he describes as a three-year course of conduct during which he was

suspended, both with and without pay, and otherwise harassed.  The EEOC charge clearly makes no mention of either his suspensions or continuing harassment or hostile work environment. Indeed, Bradley left unchecked the box, "continuing action."  And it does not mention the September 2009 departmental charges against him, which were based upon an incident occurring on January 4, 2008; instead, the EEOC charge is based upon two discrete incidents, *i.e.*, the departmental disciplinary charges in January 2009 and May 2009.  Nor is there any evidence that his suspensions and alleged harassment were part of, or should have been part of, a reasonable investigation by the EEOC of the January 2009 and May 2009 departmental charges. Consequently, the Court concludes Bradley's Count I, claiming employment discrimination, may only go forward based on the January 2009 and May 2009 departmental charges.  As for Count II, which claims retaliation for engaging in protected activity, that count, initially at least, survives the motion to dismiss because exhaustion is not necessary.  *See Nealon*, 958 F.2d at 590.

### c.  *Merits*

The Department implicitly argues that Bradley's claim of discrimination in Count I fails to state a claim for relief because the complaint itself shows he never suffered an adverse employment action in relation to the January 2009 and May 2009 departmental charges.  (Defs.' Opp'n 25 n.5.)  These charges were founded upon an April 26, 2008, arrest of Bradley for alleged involvement in a domestic incident with his then-wife.  (Compl. ¶ 16.)  Bradley was found not guilty of the criminal charges, and he was found not guilty by the Department's Trial Board on the departmental charges based upon the April 26, 2008 incident.  (*Id.* ¶¶ 16-17.) Although he complains of being suspended without pay, that status was due to his being involved in a January 4, 2008, incident in which he was charged with pointing a handgun at the owner of a vehicle repair shop and refusing to pay for vehicle repairs.  (*Id.* ¶¶ 14-15.)  This other incident

resulted in Bradley's entering an *Alford*[2] plea on January 21, 2009, to the charge of reckless endangerment, the striking of the finding of guilt, and Bradley's receiving probation before judgment. (*Id.* ¶ 18.) Nine days later, his status was changed from "'suspended without pay' to 'suspended with pay' pending the completion of an Administrative Departmental Investigation, and the outcome of an administrative disciplinary hearing for the disciplinary charges which resulted from the departmental investigation of this alleged incident." (*Id.* ¶ 19.)

"Regardless of the route a plaintiff follows in proving a Title VII action, the existence of some adverse employment action is required"; an adverse employment action is defined as "a discriminatory act which 'adversely affect[s] "the terms, conditions, or benefits" of the plaintiff's employment.'" *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004) (citations omitted). Bradley's complaint unequivocally establishes that he suffered no adverse employment action because of the January 2009 and May 2009 departmental charges. Thus, he has pleaded himself out of court on Count I.

As for Count II, the Title VII retaliation claim, it requires evidence of adverse employment action causally connected to a plaintiff's engaging in protected activity. *See Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989) (plaintiff may prove unlawful retaliation based upon engagement in protected activity, adverse employment action, and causal connection between protected activity and adverse employment action). Section 2000e-3(a), Title 42, United States Code, prohibits discrimination against an employee because the employee opposed his or her employer's unlawful employment practice or made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing under Title VII.

Bradley alleged he

engaged in protected activities, including but not limited to: communications with the F.O.P., filing internal and/or external grievances and complaints against

---

[2] Referring to *Alford v. North Carolina*, 400 U.S. 25 (1970).

Defendants and other [*sic*]; and complaining about discrimination, harassment, inappropriate actions, mistreatment, and/or hostile work conditions in the Department generally.   Therefore, the Defendants were aware of Plaintiff's complaint.

(Compl. ¶ 49.)  It is questionable, at best, whether he has sufficiently alleged that he engaged in protected activity within the meaning of § 2000e-3(a).   However, there is a more certain deficiency in his complaint, and it is twofold:  one, the adverse employment actions he claims to have suffered in retaliation for asserting his rights under Title VII are the same adverse employment actions that allegedly flowed from the January 4, 2008, incident for which he later entered an *Alford* plea and received probation before judgment (*compare* ¶ 43 *with* ¶ 50); and two, he has alleged no facts from which the Court may draw a reasonable inference that those actions were causally connected with his alleged engagement in protected activity.   His complaint, therefore, fails to state a claim for relief under Title VII's antiretaliation provision.

Accordingly, the motion to dismiss will be granted for all Police Defendants on the Title VII claims in Counts I and II.

### 2.   *Claim under 42 U.S.C. § 1981*

Bradley has alleged in Count III that his right under § 1981 to make and enforce contracts on equal terms with white persons was violated when he was suspended; was unable to earn overtime, to receive requested assignments, to receive secondary employment, and to advance and be promoted; and suffered a reduction in pay.  (Compl. ¶ 54.)  At no time has he made allegations to permit the Court to infer that the individuals he has specifically named—the Commissioner, Shields, or Grimes—did themselves suspend Bradley, reduce his pay, or intentionally take any other action to cause the violation of his rights under § 1981. Consequently, Bradley has failed to state a claim for relief under § 1981 against these three individuals, and they will be dismissed from Count III.

As for the § 1981 claim against BPD, it falls within the ambit of the Supreme Court's decision in *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989), which held that a local governmental entity could not be sued directly under § 1981 because § 1983 is the exclusive federal damages remedy for violation of rights guaranteed by § 1981 when the claim is pressed against a state actor. *Id.* at 735. *See also Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995). Therefore, Bradley's independent claim under § 1981 against BPD will be dismissed.

### 3.  Claim under 42 U.S.C. § 1983

The remaining defendants under Count IV are BPD and the Commissioner. Bradley alleges that the defendants discriminated against him "by suspending him for over three years without a hearing before the trial board and denying privileges and benefits in subsequent months and years, thereby depriving Plaintiff of the rights, privileges and immunities secured to him by the Constitution [and] the laws of the United States . . . ." (Compl. ¶ 57.) As noted previously, Bradley has not made any factual allegations to allow an inference that the Commissioner himself suspended Bradley, reduced his pay, or intentionally caused any other adverse employment action. "'Supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (citation omitted). But such liability is not based upon the doctrine of *respondeat superior*; instead, it "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Id.* (citation omitted). Other than Bradley's conclusional allegation that the Commissioner "condoned, ratified, authorized and/or engaged in the discriminatory practices, policies and wrongful acts described in this Complaint through its [*sic*] agents/employees" (Compl. ¶ 6), Bradley has not pleaded one factual allegation to allow a reasonable inference that the Commissioner was aware of unconstitutional

discrimination by subordinates, much less was deliberately indifferent or tacitly approving of such discrimination. *See Baynard*, 268 F.3d at 235 (reviewing elements of supervisory liability claim under § 1983). Consequently, the Commissioner will be dismissed from Count IV.

The essence of Bradley's § 1983 claim against the Department is that he was suspended—at times, with pay and, at other times, without pay—for approximately three years while awaiting his trial board on the September 2009 departmental charges relating to the second-degree assault incident on January 4, 2008; during that time, he was denied privileges and benefits, and, allegedly, Caucasian officers were not disciplined as severely for the same or similar conduct. Inferentially, Bradley's complaint may be read as also complaining about the length of time required to resolve his suspended status when compared to the length of time for resolution of departmental charges against Caucasian officers. This adequately states a claim for relief and, accordingly, BPD's motion to dismiss Count IV will be denied.

However, BPD's alternative motion is for summary judgment and is based upon evidence that establishes appreciable differences between Bradley and the Caucasian officers that he alleged were similarly situated. It is also based upon evidence that Caucasian officers, with whom he may be regarded as similarly situated, received disciplinary treatment that was not significantly different from the manner in which he was treated.

In Bradley's EEOC complaint, he took issue with being the subject of administrative charges (January and May 2009) and being recommended for termination after he was involved in domestic incidents. (Compl., Ex. 1 at 5.) He listed in his original EEOC charge the following police officers as comparators: Mike Brassel, Eric Markey, Angelo Colletti, and Erik Janik. (*Id.*) In Bradley's amended EEOC charge, he omitted Mike Brassel and added Deborah McMillan and Robert Manning. (*Id.* at 6.) In his federal court complaint, he included the following as comparators: Deborah MacMillan (the Court presumes this is the same individual

as Deborah *McMillan*), Michael Brassel, Eric Markey, Angelo Colletti, Ralph Raymond Archibald, Steven Carlos Cabral, Robert Guy Cirello, Robert Harold Gordon, and Eric Janik. (Compl. ¶¶ 30-31.)

According to the evidence adduced by BPD, comparators received the following treatment:[3]

1. <u>Comparator A</u>:  Criminally charged with second-degree assault; suspended in November 2005 with pay for four years until his trial board in November 2009; trial board recommendation of 60-day suspension and severe letter of reprimand; employment terminated by the Commissioner.

2. <u>Comparator B</u>:  Criminally charged with second-degree assault; suspended without pay May 2009 through late-August 2010, then suspended with pay from late-August 2010 to "the present" (affidavit dated December 29, 2011); charging committee recommended termination; awaiting trial board scheduled for February 2012.

3. <u>Comparator C</u>:   Criminally charged with theft over $500; suspended without pay approximately two-and-a-half months, then status changed to suspended with pay after being found not guilty of criminal charges; trial board recommendation of termination; retired on medical disability August 2010.

4. <u>Comparator D</u>:   Criminally charged with second-degree assault; suspended with pay approximately one week, then status changed to suspended without pay early November 2009 to early August 2010; status changed again to suspended with pay early August 2010; investigation did not yield departmental charges; restored to full duty June 2011.

---

[3] Because BPD's evidence regarding the comparators was filed under seal, the Court will refer to them anonymously.

5. <u>Comparator E</u>:  Arrested February 2009 on charge of domestic violence and suspended with pay same day until early September 2009; charging committee recommended termination; trial board found him not guilty.

6. <u>Comparator F</u>:  Arrested for second-degree assault; suspended with pay late-April 2008 through late-October 2008; received middle letter of reprimand and five days' suspension with pay.

7. <u>Comparator G</u>:  Involved in two domestic violence incidents, one in which he was alleged victim and another in which he was both alleged suspect and victim; no indication of arrest in either incident; suspended for first incident approximately two-and-a-half months until early March 2008 when he was placed on medical suspension; returned to full duty mid-October 2008; suspended for second incident mid-July 2010 until restored to full duty early April 2011; no departmental charges filed in either incident.

8. <u>Comparator H</u>:  Unspecified departmental charge; medical suspension with pay in May 2009; restored to full duty August 2009; charge not sustained.

9. <u>Comparator I</u>:  Involved in an incident that also involved alcohol; charge sustained; suspended 45 days without pay.

(Defs.' Mot., Ex. 1, Aff. Kimberly Spalt & supporting exhibits, ECF No. 13.)

The evidence pertaining to Bradley indicates he received no unusual treatment in relation to either set of departmental disciplinary charges.  As his complaint reveals, the charging committee recommended termination for the domestic violence incident, but the trial board did not sustain the charge.  Also, his allegations make clear that the suspensions he received were in relation to the second set of charges, relating to the second-degree assault on the vehicle shop owner.  And, although the charging committee recommended termination, Bradley agreed to resolve the September 2009 charges by settling for a 15-day suspension without pay and 15

days' loss of leave.  (*Id.* Ex. 2, Aff. Linda Shields & supporting exhibits.)  Further, the evidence does not reveal any unusual length of time for resolution of his departmental charges in relation to any other officer.  Moreover, the evidence submitted by BPD refutes any allegation of discriminatory animus.  (*See, e.g.*, *id.*, Aff. Shields, supp. ex. 3, Letter Shields to Shulman (Plaintiff's counsel) 9/10/2010 (explaining reasons for schedule of trial board hearings).)

Bradley has offered no evidence to contradict any of the evidence propounded by the Police Defendants.  Rather, he asserts that if the Court finds he has not made a *prima facie* showing of discrimination, then he should be permitted additional time to conduct discovery "to review the officers' police jackets and investigation files pertaining to the incidents leading to this lawsuit."  (Pl.'s Opp'n 28.)  This assertion is insufficient under Federal Rule of Civil Procedure 56(d) to avert summary judgment.  Rule 56(d) requires the nonmovant "by affidavit or declaration" to show that, for specific reasons, "it cannot present facts essential to justify its opposition."  Failure to present such an affidavit or declaration to the Court, coupled with the movant's demonstration that no genuine dispute of material fact exists and that it is entitled to judgment as a matter of law, requires the granting of summary judgment for BPD on Count IV.

### 4.  *Claim under 42 U.S.C. § 1985(3)*

Bradley's next count alleges, "Defendants conspired with and amongst each other to deny Plaintiff the rights, privileges and immunities, and equal protection of the laws . . . ."  This is a clear example of a bald allegation unsupported by specific factual content to allow a reasonable inference of unlawful conspiracy.  *See A Society Without A Name v. Virginia*, 655 F.3d 342, 346-47 (4th Cir. 2011), *cert. denied*, 132 S. Ct. 1960 (2012) (rejecting conclusional allegation of conspiracy in absence of "concrete supporting facts").  Bradley has failed to state a claim for relief in Count V.

### B.  State Claims

#### 1.  Claims under Maryland Fair Employment Practices Act ("FEPA")

FEPA is considered by the Maryland Court of Appeals to be the state law analogue of Title VII, and its interpretation is guided by federal cases interpreting Title VII.  *Haas v. Lockheed Martin Corp.*, 914 A.2d 735, 742 (Md. 2007), *cited in Linton v. Johns Hopkins Univ. Applied Physics Lab.*, Civ. No. JKB-10-276, 2011 WL 4549177, at *4 (D. Md. Sept. 28, 2011). Cases from this Court have applied Title VII case law to pendent FEPA claims.  *See, e.g.*, *Linton*, 2011 WL 4549177, at *4; *Alexander v. Marriott Int'l*, Civ. No. RWT-09-2402, 2011 WL 1231029, at *7 (D. Md. Mar. 29, 2011).  Thus, consistent with the analysis of Bradley's Title VII claims, the Court concludes that the Commissioner, Grimes, and Shields may not be held liable for claims of discrimination or retaliation under FEPA.  Likewise, Count I fails under FEPA to state a claim for relief because the complaint shows Bradley did not suffer an adverse employment action from the departmental charges that comprised his exhausted claim of discrimination.  Finally, Count II also fails to state a claim for relief under FEPA because of the absence of plausible factual allegation showing a causal connection of adverse employment action with protected activity.  Counts I and II will be dismissed in their entirety.

#### 2.  Claim of Intentional Infliction of Emotional Distress ("IIED")

Bradley's claim of IIED is similarly devoid of factual allegations to establish a plausible claim.  The mere fact that he was suspended while awaiting the outcome of his disciplinary charges is inadequate to support his assertion that the suspension "constituted intentionally extreme and outrageous behavior" (Compl. ¶ 66).  Count VI will be dismissed for failure to state a claim for relief.

### 3.   *Claim of Negligent Retention and/or Supervision*

This cause of action derives from the common law and is predicated upon a defendant's liability for another employee's tortious conduct.   *See Bryant v. Better Bus. Bureau of Greater Md., Inc.*, 923 F. Supp. 720, 751 (D. Md. 1996).   It cannot be based upon a violation of statute by another employee because violation of a statute is not tortious conduct at common law.   *Id.* Bradley's case is founded upon violations of federal and state law pertaining to employment discrimination and denial of civil rights.   Consequently, his claim of negligent retention and supervision has no basis in law and Count VII will be dismissed.

### 4.   *Claim of Civil Conspiracy*

This claim of conspiracy has no more traction than Bradley's federal claim of conspiracy. He rests this count upon his bare conclusions and fails to plead sufficient factual content to sustain a plausible claim for relief.   In addition, the Maryland Court of Appeals has emphasized that "conspiracy is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff."   *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 284 (Md. 2007) (citations and internal quotation marks omitted).   Bradley's complaint lacks allegations to support a case for "other tortious injury" to him.   Count VIII will be dismissed.

### 5.   *Claim of Tortious Interference with Prospective Advantage*

This claim rests upon his unsuccessful claims of employment discrimination.   Because the premise is unsustainable, this count, derived therefrom, is also unsustainable.   Bradley's mere characterization of his suspension as "improper" (Compl. ¶ 87) does not support an inference that any defendants suspended him for an unlawful purpose and without right or justifiable cause, which would be essential to Bradley's proof of a claim of tortious interference with prospective advantage.   *See Blondell v. Littlepage*, 991 A.2d 80, 97 (Md. 2010) (discussing elements of tort).   Count IX will be dismissed for failure to state a claim for relief.

### 6. *Claim of Violation of Maryland Declaration of Rights*

This final claim also rests upon Bradley's unsuccessful claims of employment discrimination. It, too, fails. Count X will be dismissed.

### V. *Conclusion*

The Police Defendants are entitled to judgment in their favor on all counts. A separate order will follow.

DATED this <u>19th</u> day of September, 2012.

BY THE COURT:

_____/s/_____
James K. Bredar
United States District Judge